**UNITED STATES of America**

v.

**William T. SMITH.**

**Crim. No. 84–0156–04.**

United States District Court,
M.D. Pennsylvania.

March 19, 1987.

See also, 107 S.Ct. 668.

James J. West, Asst. U.S. Atty., Harrisburg, Pa., for U.S.

John Roger Carroll, Philadelphia, Pa., for defendant Smith.

## OPINION

MUIR, District Judge.

Smith, Torquato and others conspired to defraud the people of this Commonwealth. All received jail sentences and fines save one who committed suicide the day before his sentencing. Smith as County Chairman of the Republican party at the seat of government had potent Republican influence. Torquato through his family had extensive high Democratic connections.

Smith and Torquato were by far the principal actors. The four convicted bit players, Asher, Ellis, Herbert and Stoneman, received jail sentences ranging from 30 days to a year and a day. Only two of them escaped the maximum fines. They are Ellis who was fined $3,000.00 and Asher who was fined $205,000.00.

The Government offered Smith and Torquato identical plea bargains which limited their exposure to five years imprisonment and a $10,000.00 fine in exchange for guilty pleas and promises to testify truthfully in subsequent proceedings. Torquato accepted the offer.

It is our practice to reduce the sentence of a defendant who pleads guilty because the plea evidences contrition and saves the expense of prosecution. Torquato was sentenced on his guilty plea to the maximum fine and four years imprisonment, double that requested by the Government. The U.S. Attorney appeared before the Parole Commission and secured a further reduction for Torquato.

Smith rejected the Government's plea bargain but offered to testify against his co-conspirators if granted full immunity which guaranteed that he would not be punished. The Government understandably refused to immunize Smith because he and Torquato were at the apex of the fraudulent scheme. Smith elected to go to trial, testified, lost his gamble, was convicted and sentenced to 12 years and a $63,000.00 fine.

After losing his appeals, Smith changed his tune. He offered to testify truthfully against others if the Government would refrain from prosecuting his wife and

would join in Smith's motion to reduce his sentence to that served by Torquato. The Government accepted the offer. There has been no prosecution of the wife. Smith, acknowledging in the second trial that his testimony in his own trial was false, testified against the State Treasurer and the State Chairman of the Republican party, both of whom were found guilty. Within hours of leaving the stand, Smith suffered a massive and near fatal heart attack. He is now serving his 12–year sentence.

Smith's sentence was determined through the following process which is used in this court in all criminal cases. The probation officer prepared a comprehensive pre-sentence report. The lawyers met with the Court at a pre-sentence conference, recommended sentences, and gave their reasons therefor. The probation officer made a private recommendation. Additional statements were made at sentencing. The Court considered all of these matters and the evidence at trial. Smith's sentence was arrived at by the most complete procedure which we can devise including a pre-sentence conference which may be a unique step in the sentencing process. All factors involved were given the most thorough scrutiny.

Smith has moved for reduction of his sentence, claiming that it is disproportionate, that his testimony in the second trial was highly beneficial to the Government, that his health is poor, that he has been suspended from practicing law, and that he is financially ruined. To secure a reduction Smith must convince us that the sentence was either unduly harsh or that events subsequent to the sentencing require a modification. *U.S. v. Dunn,* 585 F.Supp. 1365 (D.Ill.1984).

The crimes in this case struck at the very heart of state government. The sums involved were astronomical. Smith's share of the profits was 50% and was, according to our recollection, originally estimated to reach $2,000,000. It was our judgment at the time of sentencing that the sentence was fair.

Smith's jail sentence was triple Torquato's. If Torquato had been convicted on all the counts on which Smith was convicted, he would probably have received a sentence approximating Smith's. The guilty plea by Torquato severely limited this Court's discretion by putting a five-year cap on his sentence. This is one reason for the difference in their sentences. There is yet another important distinction between Torquato and Smith. By the time of the first trial, Torquato had withdrawn from the conspiracy. In contradistinction, Smith's perjury in the first trial was an additional illegal act which appears to us to have been designed to further either the old conspiracy or a new conspiracy to obstruct justice. Smith's sentence was substantially greater than Torquato's and properly so.

The U.S. Attorney asserts that Smith's testimony in the second trial was of great value to the Government and that without it neither the State Treasurer nor the Republican State Chairman would have been found guilty. That may be correct but does not mean that we should reward Smith for his testimony. He should have testified truthfully in the first place or not at all. Further, and more importantly, this Court is not an adjunct of the Department of Justice. We are not concerned with whether a jury trial results in a conviction or in an acquittal. Our only concern is that the trial be as fair as it is humanly possible to make it.

Smith's ill health, assuming that it continues, is no ground for modifying the sentence. Many prisoners become ill. The Bureau of Prisons has at least one medical center and in a proper case will utilize contract hospitals and physicians.

Disgrace, disbarment, and impoverishment are but the natural consequences of Smith's own acts. He should have heeded their foreshadows just before he stepped into the conspiracy.

To reduce Smith's sentence to Torquato's would enable Smith to take his chances at trial, be convicted, recant his testimony, testify against others, and then be treated just like Torquato who admitted his guilt initially. We decline to be a party to such a device.

The events which have occurred since Smith's sentencing do not, in our judgment, warrant a reduction of the sentence. It is our carefully considered view that in a crime of this magnitude Smith's sentence was fair when imposed and remains a proper one. We decline to change it.

An appropriate order will be entered.